# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

MICHAEL HARGIS,

      Plaintiff,

v.      Case No. 17-cv-410-JED-FHM

EQUINOX COLLECTION SERVICES, INC.,

      Defendant.

## OPINION & ORDER

Plaintiff Michael Hargis has brought this putative class action against Equinox Collection Services, Inc. ("Equinox"), a debt collector, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Plaintiff alleges that Equinox, in attempting to collect on a disputed medical bill on behalf of its client, Dr. ZZZ's Sleep Center, Inc. ("Dr. ZZZ's"), sent Plaintiff a collection letter that violated certain provisions under 15 U.S.C. § 1692g(a). Plaintiff alleges three separate violations: (1) that the letter failed to properly identify the name of the creditor to whom the debt was owed, (2) that the letter improperly required consumers to notify Equinox of debt disputes in writing, and (3) that it failed to inform consumers that requests for the name and address of the original creditor needed to be in writing. (Doc. 2 at 6-8). Plaintiff asserts that he and the putative class are entitled to an award of statutory damages, as well as costs and attorney's fees. (*Id*. at 7). Plaintiff also seeks a declaratory judgment finding that the collection letter violates the FDCPA. (*Id*.).

Equinox has moved pursuant to Fed. R. Civ. P. 12(b)(1) for dismissal of Plaintiff's case based on a lack of subject matter jurisdiction. (Doc. 24). Citing the Supreme Court case *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Equinox asserts that Plaintiff has failed to satisfy the injury-in-fact demands of Article III standing.

Rule 12(b)(1) motions generally take the form of either a facial or a factual attack. *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005) (citing *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995)). "Under a facial attack, the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true." *Id*. In contrast, the movant bringing a factual attack "goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends." *Id*. When reviewing a factual attack, the district court "may not presume the truthfulness of the complaint's factual allegations" and, instead, "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Holt*, 46 F.3d at 1003. In this case, because Equinox's 12(b)(1) motion is accompanied by supporting evidence, the Court construes the motion as a factual attack on subject matter jurisdiction.

The Court must then consider whether conversion of Equinox's 12(b)(1) motion into a Rule 56 summary judgment motion is appropriate here. The Tenth Circuit has instructed that a district court must convert a 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion "when resolution of the jurisdictional question is intertwined with the merits of the case." *Id*. In other words, the district court must determine "whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000).

The Court finds that it may consider evidence outside of the complaint in this case without converting Equinox's 12(b)(1) motion into one for summary judgment. There is essentially one issue raised by the substantive claims in this case: whether Equinox violated the requirements set

out in § 1692g(a) of the FDCPA. The Court need not resolve this issue in order to rule on standing, as will become clear in the Court's analysis below.

## II.     <u>Legal Standards</u>

"Article III . . . gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990). The Supreme Court has set forth three elements that constitute "the irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In order to have standing, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-61; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). Importantly, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

In order to satisfy the injury-in-fact requirement, a plaintiff must show that he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*. (quoting *Lujan*, 504 U.S. at 560 n.1). To meet the concreteness requirement, the injury "must actually exist." *Id*. It must be "real" and not "abstract." *Id*.

Intangible harm may still qualify as "concrete," and courts are instructed to consider both history and the judgment of Congress in determining whether a particular intangible harm constitutes injury in fact. *Id*. at 1549. As explained by the Court in *Spokeo*, "[i]t is instructive to

3

consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. Congress may also "define injuries and article chains of causation that will give rise to a case or controversy where none existed before." *Id*. (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)).

Yet, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. One may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. Whereas some alleged procedural violations may be sufficient to constitute injury in fact, others may not cause harm or present any material risk of harm. *Id*. In the latter cases, a plaintiff would need to allege "*additional* harm beyond the one Congress has identified." *Id*. (emphasis in original).

In *Spokeo*, the Supreme Court addressed the injury-in-fact requirement in the context of the Fair Credit Reporting Act of 1970 ("FCRA"). The Court found that the Ninth Circuit had failed to address whether the particular procedural violations alleged in the case "entail[ed] a degree of risk sufficient to meet the concreteness requirement." *Id*. at 1550. On remand, the Ninth Circuit understood the Supreme Court as establishing a two-part inquiry for evaluating claims based on statutory violations:

> In evaluating [plaintiff's] claim of harm, we thus ask: (1) whether the statutory provisions at issue were established to protect his concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.

*Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017). The Sixth Circuit has interpreted *Spokeo* in a similar manner, finding that statutory violations fall into "two broad categories":

(1) where the violation of a procedural right granted by statute is sufficient in and of itself to constitute concrete injury in fact because Congress conferred the procedural right to protect a plaintiff's concrete interests and the procedural violation presents a material risk of real harm to that concrete interest; and (2) where there is a "bare" procedural violation that does not meet this standard, in which case a plaintiff must allege "*additional* harm beyond the one Congress has identified."

*Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 755 (6th Cir. 2018) (quoting *Spokeo*, 136 S. Ct. at 1549) (applying *Spokeo* to claims of harm under the FDCPA).

## III. Alleged FDCPA Violations

Section 1692g(a) of the FDCPA provides:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

**(1)** the amount of the debt;

**(2)** the name of the creditor to whom the debt is owed;

**(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

The Tenth Circuit and other circuit courts of appeal have applied an objective standard to claims under the FDCPA, "measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector." *Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693,

5

at *1 (10th Cir. Nov. 3, 1997) (unpublished table opinion) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)); *see also Terran v. Kaplan*, 109 F.3d 1428, 1431 (9th Cir. 1997) ("[W]hether the initial communication violates the FDCPA depends on whether it is likely to deceive or mislead a hypothetical least sophisticated debtor.") (internal quotation marks omitted); *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("[I]t is implicit that the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude.").

In his complaint, Plaintiff alleges that Equinox violated § 1692g(a)(2), (3), and (5). (Doc. 2 at ¶¶ 25-29). First, Plaintiff alleges that Equinox failed to properly identify the name of the creditor to whom the debt was owed. He points to language in the collection letter identifying D. ZZZ's as the "original creditor" and asserts that "the least sophisticated consumer would reasonably believe that the medical debt had been sold or assigned to a subsequent creditor"—when, in fact, it had not. (*Id.* at ¶ 26). The alleged § 1692g(a)(3) violation stems from a statement in the letter that Equinox will "assume this debt to be valid" unless Equinox is notified "in writing" within thirty days that the consumer disputes the debt. (*See* Doc. 2-1 at 2). Plaintiff asserts that this statement violates § 1692g(a)(3) by requiring consumers to notify Equinox of a debt dispute *in writing*. Lastly, Plaintiff asserts that the collection letter violates § 1692g(a)(5) by *not* requiring requests for the name and address of the original creditor, if different from the current creditor, to be made in writing. (Doc. 2 at ¶ 29).

In its 12(b)(1) motion, Equinox challenges the concreteness of Plaintiff's alleged harm. In regard to the alleged violation of § 1692g(a)(2), Equinox argues that Plaintiff suffered no concrete injury because his deposition testimony demonstrates that he correctly understood that Dr. ZZZ's

was the current creditor. (Doc. 26 at 7) (citing Doc. 26-1 at 23 [Hargis Dep. 23:5-7]). As to the alleged violation of § 1692g(a)(3), Equinox insists Plaintiff has no standing because Equinox "accepted Plaintiff's multiple verbal disputes" of the debt despite the collection letter's language requiring that such disputes be made in writing. (*Id*. at 8) (citing Doc. 26-1 at 18-20 [Hargis Dep. 18:21-25, 19:17-20:5]). Equinox further argues that Plaintiff lacks standing because he suffered no emotional or economic damages. (*Id*. at 9) (citing Doc. 26-1 at 49, 51-52 [Hargis Dep. 49:16-25, 51:11-52:16]). Plaintiff, in turn, responds that the denial of access to information required by the statute is, in and of itself, a concrete injury and that actual damages are not required.

## IV.    Analysis

The Court must first evaluate whether the statutory provisions at issue were established to protect Plaintiff's concrete interests, as opposed to purely procedural rights. *See Robins*, 867 F.3d at 1113. In passing the FDCPA, Congress found that there was "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" and that such practices contributed to "the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Thus, the purpose of the FDCPA was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." § 1692(e); *see also* S. Rep. No. 95-382, at 1 (1977) (describing the purpose of the FDCPA as protecting consumers "from a host of unfair, harassing, and deceptive debt collection practices."). In this context, it is clear that the provisions of § 1692g were intended to protect consumers' concrete rights to be free from misleading or otherwise unfair initial communications from debt collectors. *See Macy*, 897 F.3d at 756 (finding the FDCPA codified "several specific

consumer-protective rights, including those in Section 1692g" in order to advance the overarching goals of the statute); *see also Zirogiannis v. Seterus, Inc.*, 707 F. App'x 724, 727 (2d Cir. Sept. 12, 2017) (unpublished) ("[W]e have no trouble concluding that § 1692g of the FDCPA 'protect[s] an individual's concrete interests.'").

Having found that § 1692g was intended to protect consumers' concrete interests, the Court must then evaluate whether the specific procedural violations alleged in this case present a material risk of harm to those concrete interests.

Assuming, arguendo, that Equinox's identification of Dr. ZZZ's as the "Original Creditor" constitutes a violation of § 1692g(a)(2), the failure to clearly identify "the name of the creditor to whom the debt is owed" poses a real risk of harm. Specifically, a recipient might find himself confused and "obliged to guess who currently owned the debt[] in question." *Janetos v. Fulton Friedman & Gullance, LLP*, 825 F.3d 317, 323 (7th Cir. 2016). As suggested in Plaintiff's response brief, a consumer may fear that payment will go to a party that has no legal right to payment or that he will be collected upon by both the "original creditor" and the "current creditor." (Doc. 34 at 24). In fact, the Seventh Circuit has specifically noted the potential for fraud as a "serious problem with the failure to disclose the current creditor." *Janetos*, 825 F.3d at 324.

Although Equinox points to evidence that Plaintiff did not himself experience confusion over the identity of the current creditor, the undersigned finds that Plaintiff need not prove that the alleged violation of § 1692g(a)(2) caused him confusion in order to have standing. Instead, a violation of this particular procedural right "is sufficient in and of itself to constitute concrete injury in fact because Congress conferred the procedural right to protect a plaintiff's concrete

interests and the procedural violation presents a material risk of real harm to that concrete interest." *Macy*, 897 F.3d at 755.[1]

In regard to § 1692g(a)(3), Plaintiff alleges that Equinox added an in-writing requirement for debt disputes when a number of courts have held that § 1692g(a)(3) does not impose such a requirement. *See Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013) ("The language of § 1692g(a)(3) does not incorporate the writing requirement included specifically in other sections of the same statute. We see no reason to ignore this difference in statutory language."); *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 490-91 (4th Cir. 2014); *Macy*, 897 F.3d at 758 n.9 ("Congress distinguished between FDCPA protections that may be triggered orally (such as those in Section 1692g(a)(3)), and those that may only be invoked in writing (such as those in Sections 1692g(a)(4), (a)(5), and (b)).").

Assuming, arguendo, that Equinox's collection letter violated § 1692g(a)(3), the Court finds that such a violation presents a material risk of harm to the concrete interests Congress intended to protect. As noted by the Second Circuit in *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, "[t]he right to dispute a debt is the most fundamental of those set forth in § 1692g(a)." 717 F.3d at 286. "[O]nce a debt has been disputed, a debt collector cannot communicate the debtor consumer's credit information to others without disclosing the dispute." *Id*. 285 (citing 15 U.S.C. § 1692e(8)). A dispute also triggers § 1692h, which precludes debt collectors from applying any single payment by the consumer to a disputed debt if the consumer owes multiple debts. A dispute

---

[1] The Court notes the Seventh Circuit's holding in *Janetos v. Fulton Friedman & Gullance, LLP* that a plaintiff may ultimately succeed on the merits of a claim based on § 1692g(a)(2) without presenting extrinsic evidence of confusion. 825 F.3d at 318 ("If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion.").

9

made in writing triggers the additional protection of requiring the debt collector to "cease collection of the debt" until it complies with certain conditions relating to the verification of the debt. *See* § 1692g(b). Thus, a failure to provide accurate information concerning how to dispute a debt entails a significant risk that consumers will forego disputing a debt altogether and lose important consumer protections—even if the debt collector, in practice, handles disputes differently (and more generously) than is suggested by the collection letter itself.

Lastly, as explained above, the alleged violation of § 1692g(a)(5) is that Equinox failed to include the in-writing requirement for consumers seeking to validate the name and address of the original creditor. "[A]n oral inquiry or dispute of a debt's validity has different legal consequences than a written one." *Macy*, 897 F.3d at 757-58; *see also Hooks*, 717 F.3d at 286 ("Debtors can protect certain basic rights through an oral dispute, but can trigger a broader set of rights by disputing a debt in writing."). Under § 1692g(b), a *written* request for the name and address of the original creditor triggers the requirement that the debt collector "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains . . . the name and address of the original creditor" and mails a copy of the name and address of the original creditor to the consumer. If the consumer chooses to make this request orally instead of in writing, he loses this important protection. Thus, the Court finds that Equinox's alleged failure to properly disclose information concerning requests for the identity of the original creditor entailed sufficient risk to satisfy the concreteness prong of the injury-in-fact requirement without Plaintiff needing to allege or prove additional harm.

V.  **Conclusion**

For the reasons discussed above, the Court finds that Plaintiff has standing under Article III to bring his claims under the FDCPA. Defendant Equinox's Motion to Dismiss (Doc. 24) is hereby **denied**.

**SO ORDERED** this 3rd day of June, 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT